Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
Amelia A. Haselkorn (CSB No. 339633)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956.1000

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444

Lynn Lincoln Sarko (*Pro Hac Vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREY FOX, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P. et al., <br><br> Defendants. | Case No.  2:16-cv-03157-PSG-JEM <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)** <br><br> Hearing Date:   May 10, 2024 <br> Time:                1:30 p.m. <br> Judge:              Hon. Philip S. Gutierrez <br> Courtroom:       6A |

TO ALL THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the Honorable Philip S. Gutierrez, in Courtroom 6A of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012-4565, has set a hearing on May 10, 2024, at 1:30 p.m. for Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e), unless the Court elects to decide this unopposed motion without a hearing. Plaintiffs, by and through their attorneys of record, will move and hereby do move the Court for an order pursuant to Federal Rule of Civil Procedure 23(e)(1) granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Ex. 1, the "Settlement" or "SA")[1] and for Direction of Notice Under Rule 23(e). Plaintiffs request that in this Court order the following:

1.      Grant preliminary approval of the proposed Settlement;

2.      Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Rule 23(e)(1);

3.      Appoint JND Legal Administration as Settlement Administrator and direct JND Legal Administration to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement; and

4.      Enter a scheduling order consistent with the dates set forth in the below Memorandum.

This Motion is based on this Notice of Motion and Motion; the accompanying memorandum; the Settlement, including all exhibits thereto; the Declarations of Robert J. Nelson and Gina Intrepido-Bowden filed herewith; the arguments of counsel; all papers and records on file in this matter, and such other matters as the Court may consider.

---

[1] Unless otherwise noted, exhibit references are to the supporting declaration by Robert J. Nelson ("Nelson Decl.").

2

Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
Amelia A. Haselkorn (CSB No. 339633)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956.1000

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444

Lynn Lincoln Sarko (*Pro Hac Vice)*
**KELLER ROHRBACK L.L.P**.
1201 Third Ave., Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREY FOX, LLC, et al.,<br><br>           Plaintiffs,<br>v.<br><br>PLAINS ALL AMERICAN<br>PIPELINE, L.P. et al.,<br><br>           Defendants. | Case No.  2:16-cv-03157-PSG-JEM<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Hearing Date:  May 10, 2024<br>Time:         1:30 p.m.<br>Judge:       Hon. Philip S. Gutierrez<br>Courtroom:   6A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

I.    BACKGROUND ...................................................................... 2

 A.   Procedural Background ................................................. 3

 B.   Discovery ...................................................................... 4

 C.   Summary Judgment and Consent Order ....................... 4

 D.   Mediation and Settlement ............................................. 5

 E.   The Settlement Terms ................................................... 5

  1.   Settlement Class Definition ................................ 6

  2.   Settlement Fund and Class Member Payments ... 6

  3.   Clarification of Rights of Way .......................... 7

  4.   Pipeline Safety .................................................. 8

  5.   Settlement Administration .................................. 8

  6.   Attorneys' Fees and Expenses ........................... 9

II.   LEGAL STANDARD .............................................................. 9

III.  ARGUMENT .......................................................................... 9

 A.   Proposed Settlement Class Representatives and Settlement Class Counsel zealously represented the Settlement Class. ........................................................ 10

 B.   The Settlement is the product of good-faith, informed, and arm's-length negotiations. ....................................... 11

 C.   The Settlement provides substantial relief to all Settlement Class members. .......................................... 12

  1.   The Settlement provides significant benefits to the Settlement Class in light of the costs, risks, and delay of trial and appeal. .................................... 12

  2.   The Settlement benefits will be distributed directly to Settlement Class members through a simple process. ............................................................ 14

  3.   Class Counsel will seek reasonable attorneys' fees and expenses. .................................................. 14

 D.   The Proposed Plan of Allocation treats Settlement Class members equitably relative to each other. .................... 16

 E.   Other Agreements Properly Supplement the Settlement Agreement. .................................................................. 18

IV.   The Court Will be Able to Certify the Proposed Settlement Class at Final Approval. .......................................................... 18

 A.   The Rule 23(a) factors are readily satisfied. ................ 19

 B.   The Settlement Class satisfies Rule 23(b)(3). .............. 20

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

V.    The Proposed Notice Program Provides the Best Notice
      Practicable to the Proposed Class. ......................................................21

VI.   The Court Should Schedule a Fairness Hearing and Related
      Dates..................................................................................................23

CONCLUSION..................................................................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ...................................... 17, 20, 23

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ........................................ 12

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ...................................... 15

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............................................................ 10

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................ 12, 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods.
Liab. Litig.*,
2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................................ 9

*Greer v. Dick's Sporting Goods, Inc.*,
2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ...................................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................... 19, 20

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................... 11

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ........................................ 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................... 11, 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................ 9

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. March 17, 2021) .................................... 16, 17

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................ 18

- iii -

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................. 15

5

6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab.*
    *Litig.*,
    895 F.3d 597 (9th Cir. 2018) ................................................................ 16

7

8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020)................................................... 17

9

10

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ...................................... 21

11

12

*Loomis v. Slendertone Distrib., Inc.*,
    2021 WL 873340 (S.D. Cal. Mar. 9, 2021)........................................... 10

13

*Lopez v. The GEO Group, Inc.*,
    14-cv-6639 (C.D. Cal. April 25, 2016) ................................................ 15

14

15

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) ........................................................ 19

16

17

*ODonnell v. Harris Cnty.*,
    2019 WL 4224040 (S.D. Tex. Sept. 5, 2019).................................... 18

18

19

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010)....................................................... 19

20

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 17

21

22

*Soto v. Diakon Logistics (Del.), Inc.*,
    2015 WL 13344896 (S.D. Cal. Feb. 5, 2015) ...................................... 12

23

24

*Stockwell v. City & Cnty. of S.F.*,
    749 F.3d 1107 (9th Cir. 2014)............................................................. 19

25

26

*Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*,
    2019 WL 8647819 (C.D. Cal. Nov. 4, 2019) ...................................... 11

27

28

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................ 15

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
2:16-CV-03157-PSG-JEM

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Court Rules**

Fed. R. Civ. P. 23(a)(1)........................................................................................ 19

Fed. R. Civ. P. 23(a)(4)........................................................................................ 20

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 9, 21

Fed. R. Civ. P. 23(e) ...................................................................................... 1, 2, 9

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 9, 18

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 21

Fed. R. Civ. P. 23(e)(1)(B)(i) ........................................................................... 9, 10

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 9, 10

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 10

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................ 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................ 18

Fed. R. Civ. P. 23(e)(5)........................................................................................... 9

**Treatises**

"Notices from the Court to the Class," § 21.31, Fed. Judicial Ctr.,
*Manual for Complex Litig.* (2004) .................................................................. 21

4 *Newberg & Rubenstein on Class Actions* (6th ed.), § 13:49 ............................... 14

## **INTRODUCTION**

After eight years of novel and complex litigation, the parties have reached a $70 million settlement to resolve all outstanding class claims. As set forth below, the Settlement readily satisfies the fair, reasonable, and adequate criteria for preliminary settlement approval. *See* Fed. R. Civ. P. 23(e).

The $70 million, non-reversionary payment is an exceptional result for the Class of fewer than 90 private owners of 183 Class Properties. Per the proposed Plan of Allocation, each of the Class Properties will receive at least $50,000, with median payments of approximately $90,000 and average payments of $230,000. In addition, the Settling Parties – Defendant PPC and its owner Sable Offshore Corp.[2] – agree that the Pipeline will not be replaced with a second, new pipeline system without first obtaining new easements, conceding to Plaintiffs' longstanding position that the easements do not allow for a replacement pipeline to be built. Finally, Settling Parties agree to safely operate the Pipeline pursuant to the Federal Consent Decree previously negotiated by federal and state regulatory authorities, to follow requirements for pipeline maintenance and operation under federal regulations, and use state of the art technologies in connection with its effort to restart the Pipeline, including by applying for permission to install automatic shutoff valves. In exchange, the Class agrees that Settling Parties may repair and re-open the Pipeline, record notice of easement clarifications, and install automatic shutoff valves.

This Settlement was informed by intensive litigation, mediation, and direct negotiations. Plaintiffs litigated for eight years against the Settling Parties and their predecessors, fending off pleadings challenges and a summary judgment motion, succeeding on two rounds of class certification briefing, and conducting extensive fact and expert discovery. All that remained was PPC's pending summary judgment

---

[2] Sable Offshore Corp. ("Sable") owns 100% of the equity of Pacific Pipeline Company ("PPC").

- 1 -

motion and trial, set for June of 2024. The Settlement was reached after two rounds of mediation and intensive, months-long negotiations among the parties.

Accordingly, Plaintiffs respectfully request that the Court preliminarily approve this proposed Settlement, approve notice to the Settlement Class, and set the matter for final approval. *See* Fed. R. Civ. P. 23(e).

## I.  **BACKGROUND**

This litigation involves the Las Flores Pipeline System (the "Pipeline") and the 183 land parcels through which it runs by way of easements or right-of-way grants. Dkt. 108-1 ¶ 152. The Pipeline ruptured in Santa Barbara County on May 19, 2015, spilling oil onto private property, Refugio State Beach, and into the Pacific Ocean. Dkt. 108-1 ¶¶ 1, 11.[3] One year after the oil spill, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") concluded that the cause of the rupture was integrity management failures by its owner, Plains Pipeline.[4]

The Pipeline was shut down following the oil spill, and PHMSA ordered that it remain out of operation unless and until Plains took the necessary steps required to operate it safely.[5] This directive was reinforced in the Federal Consent Decree signed by Plains and numerous regulatory bodies. *See* Stipulation and Agreement of Settlement ("Settlement" or "SA"), Ex. G (Consent Decree) at 91, App'x D at ¶¶ 1.a, 1.e.[6] To date, the government has not authorized operation of the Pipeline.

---

[3] The Pipeline was formerly known as Line 901 and Line 903.

[4] PHMSA Failure Investigation Report at 14-17, available at https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/docs/PHMSA_Failure_Investigation_Report_Plains_Pipeline_LP_Line_901_Public.pdf (last visited April. 5, 2024).

[5] *See* PHMSA Am. No. 3 to the Corrective Action Order (June 16, 2016) at 2-3, available at https://primis.phmsa.dot.gov/comm/reports/enforce/documents/520155011H/520155011H_Amendment%20No.%203%20to%20the%20Corrective%20Action%20Order_061620116.pdf (last visited April. 5, 2024).

[6] Consent Decree, *United States v. Plains All Am. Pipeline, L.P.*, No. 20-cv-2415 (C.D. Cal. Mar. 13, 2020), Dkt. 6-1.

- 2 -

### A.    <u>Procedural Background</u>

In the original Complaint dated May 2016, Plaintiffs alleged that the existing rights-of-way did not permit the extensive repair work Plains was preparing to perform. Dkt. 1 at ¶ 8. Later, in August 2017, Plains filed an application to replace the Pipeline outright.[7] Plaintiffs amended their complaint to challenge Plains' right to install a second pipeline. Dkt. 71 at ¶ 21. In 2019, Plains then moved to dismiss all of Plaintiffs claims, which this Court largely denied. Dkt. 80 (dismissing two of thirteen claims).

In January 2020, the Court granted class certification of declaratory relief claims seeking confirmation that the easements are limited to one pipeline (Claims 1, 10), and that the proposed work to replace the lines would overburden the existing easements (Claim 2). Dkt. 100. In March 2020, Plaintiffs amended the Complaint by stipulation to make some clarifications and add Claim 15, alleging the Easements had terminated. Dkt. 105 (stipulation), 108-1 (Corrected Second Amended Complaint). Certain Plaintiffs also brought individual claims unique to their properties (Claims 11–14). *See* Dkt. 108-1 ¶¶ 250–84.

In October 2022, Plains sold the Pipeline to an Exxon subsidiary, Defendant PPC. In November 2023, this Court amended the certification order, certifying the same Rule 23(b)(2) class for Claim 15 but substituting "PPC" for "Plains" given the sale to PPC. Dkt. 258. Additionally, this Court certified an Automatic Termination Clause ("ATC") Subclass, as this group had an additional argument for termination based on these clauses. *Id*. at 18 (certifying ATC Subclass inclusive of landowners with rights-of-way that automatically terminate for failure to 'operate,' 'maintain,' and/or 'use' the pipeline").

---

[7] "901/903 Replacement Pipeline Project," Case Nos. 17DVP-00000-00010; 17CUP-00000-00027; 17DRP-00000-00002; 17CDP-00000-00060, available at: https://www.countyofsb.org/3801/901903-Replacement-Pipeline-Project (last accessed Sept. 12, 2023).

In February 2024, PPC finalized an agreement with Sable, which now owns the Pipeline through its ownership of PPC. Sable and PPC are the Settling Parties to the Settlement Agreement, and Sable is responsible for paying the $70 million Settlement Fund.

### B.   Discovery

The case has required extensive discovery. Plaintiffs have propounded document requests, interrogatories, and requests for admission on both Plains and PPC. Nelson Decl. ¶ 6. All told, the parties collectively produced over 1.4 million pages of documents (inclusive of documents from the parallel *Andrews* action deemed produced in this action) and there were over twenty depositions taken regarding those documents. *Id.*

The careful review of the documents produced in discovery informed the expert work in this case. Expert discovery commenced prior to the sale of the Pipeline to PPC and PPC's joinder to the case as a Defendant. Prior to PPC's joinder as a Defendant, Plaintiffs retained four testifying experts who each submitted expert reports. *Id.* ¶ 7. Plains submitted seven expert reports. *Id.* After PPC was joined to the action, this Court adjusted the expert discovery schedule as to the claims PPC assumed. Dkt. 228. Thereafter, Plaintiffs submitted three expert reports and three rebuttal reports regarding the PPC claims. PPC retained two testifying experts who each submitted a report and a rebuttal report. *Id.* ¶ 8. Each of Plaintiffs' experts were deposed. *Id.*

### C.   Summary Judgment and Consent Order

On April 9, 2020, Plains filed a motion for partial summary judgment on Plaintiffs' certified claims, which Plaintiffs opposed with extensive evidence. Dkts. 109, 118–124-11. The Court denied Plains' motion without prejudice. Dkt. 128.

After seven years of litigation, PPC withdrew its applications to replace the Pipeline and agreed that it would not construct a replacement pipeline without

- 4 -

securing new permanent easements. Accordingly, the Court granted Judgment in Plaintiffs' favor on Claims One, Two, Three, and Ten in 2023. Dkt. 282.

That same year, PPC filed another motion for partial summary judgment, this time as to the remaining certified claim, Claim 15. Dkt. 267. Plaintiffs prepared a near-final draft of their opposition, but given the parties' advanced settlement discussions, they agreed to hold the motion in abeyance. Dkt. 298.

### D.   Mediation and Settlement

The proposed Settlement is the product of arm's length negotiations spanning many years. Nelson Decl. ¶ 9. Plaintiffs attempted to resolve this case relatively early on but to no avail. *Id.* Plaintiffs and Plains met for a two-day, in-person mediation session with mediators the Hon. Layn Phillips (Ret.) and Robert Fairbank, on October 5 and 6, 2016. Dkt. 64; Nelson Decl. ¶ 9. That mediation effort continued through 2018 and included several additional day-long sessions with Mr. Fairbank. *Id.*

Years later, Plaintiffs and PPC participated in a mediation of the PPC Claims on July 20, 2023, overseen by Robert A. Meyer, Esq. of JAMS. Dkt. 243; Nelson Decl. ¶ 10. The parties did not reach agreement at that mediation, but made some progress. *Id.* The parties, including Sable, continued to negotiate intensively over the next six months to reach agreement on the key deal points, and traded draft term sheets. *Id.* The parties continued to negotiate numerous material terms and the full Agreement (with exhibits), which was finally executed on March 26, 2024. *See* Dkt. 297.

### E.   The Settlement Terms

The proposed Settlement delivers significant value to Settlement Class members: (i) $70 million in non-reversionary cash compensation which, less fees, costs, and expenses, is available to Settlement Class members through direct payments without the need for a claims process; (ii) the automatic recording of the Easement Notice on Class Properties, bringing resolution and clarity to the scope of

the right-of-way grants on the Class Properties, while permitting Settling Parties to make repairs to restart the Pipeline; (iii) a commitment by Settling Parties to maintain and operate the Pipeline pursuant to the previously negotiated Consent Decree to which Plains was a party, including use of any safety technologies required by the decree; and (iv) a commitment by Settling Parties to make reasonable efforts to pursue regulatory approval of the installation of automatic shutoff valves. Settlement ¶ 5.2, Ex. G.

## 1.   Settlement Class Definition

The proposed Settlement Class is:

> All owners of real property, other than those excluded in Paragraph 3.2 of the Agreement, through which Line 901 and/or Line 903 passes pursuant to Right-of-Way Grants, and the owner(s) of APN No. 133-070-004, for which land rights were initially conveyed via condemnation rather than through a Right-of-Way Grant, other than those Persons excluded in Paragraph 3.2. The real property parcels through which Line 901 and/or Line 903 passes, as described above, are set forth in Exhibit A. For avoidance of doubt, the Settlement Class includes the classes and subclass certified by the Court's January 28, 2020, and November 1, 2023 orders in their entirety, as well as any other Persons (if any such other Persons exist) included in the definition in this Paragraph.

SA ¶ 3.1. The Class Properties include 183 parcels owned by 86 landowners. Dkt. 250 at 12.

## 2.   Settlement Fund and Class Member Payments

The $70 million Settlement Fund will be funded in two payments. Within 10 days of preliminary approval, Sable will pay $35 million to a qualified settlement fund (the "Initial Payment"), which will be available for payment to class members upon the Court's final approval of the settlement and expiration of the deadline for appeals. Simultaneously, Sable will provide the Settlement Class a Letter of Credit for an additional $35 million. The Letter of Credit can be drawn upon the earlier of (a) one-hundred and eighty-two calendar days following the restart of the Pipeline, (b) the date Sable pays ExxonMobil under the terms of its Purchase Agreement to restart of the Pipeline, or (c) in no event later than June 30, 2025 (the "Final

Payment"). The Letter of Credit will be issued by a federally-insured bank to ensure its security.

The Initial Payment of $35 million will fund notice and administration costs and fund the Temporary Construction Easement ("TCE") Fund of up to $2 million. To the extent a Class Property is subject to repair or valve construction work, it will be entitled to a compensatory payment under the TCE Fund even before the Effective Date of the Settlement, or potentially for payment under the Initial Payment. Class Members need not refund TCE Payments if the Settlement is not approved.

The Settlement will provide each Class Property with an "Allocation Share." Based on estimated fee and cost assumption, and that no Properties are opted out, Class Counsel estimate a minimum per-Property Allocation Share of $50,150, with median payments of approximately $90,000 and average payments of $230,000 (which reflects the broad range of property values within the Class).[8] These Allocation Share payments to Class Members will be in two installments, the first when the Settlement is effective, and the second dependent upon when the Letter of Credit can be drawn upon. Thus, Settlement Class members will not have to wait for the Final Payment in order to receive a portion of their Allocation Shares.

### 3. Clarification of Rights of Way

In exchange for these payments and commitments, Settlement Class members agree to release their claims and to certain clarifications of their right-of-way grants. Specifically, the Class Members agree that the grantees are permitted to repair and operate the Pipeline and install automatic shutoff valves should regulators allow them. Further, the Class agrees to language clarifying the circumstances under which any automatic termination clauses are triggered. The Class further agrees that Settling Parties may record notice of this Settlement

---

[8] These numbers are estimates based on various assumptions, including relating to the amount of attorneys' fees that the Court will approve for Class Counsel.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
2:16-CV-03157-PSG-JEM

Agreement to ensure record and constructive notice of the easement clarifications. *See* Nelson Decl., Exhibit 1-B (Easement Notice). As a part of the Settlement, neither Settling Parties nor any future grantee may replace the Pipeline without first obtaining new easements.

### 4.   Pipeline Safety

The Settlement further commits Sable and PPC to abide by all of the terms of the Consent Decree that apply to them. *See* SA ¶ 5.2, Ex. G.[9] Further, Settling Parties commit to make reasonable efforts to obtain approval to install automatic shutoff valves throughout the Pipeline. SA ¶ 5.2. These commitments will help ensure that the Pipeline is restored using the best available technologies and re-opened and maintained in a manner designed to prevent future ruptures and spills.

### 5.   Settlement Administration

The proposed Settlement Administrator—JND Legal Administration—was selected through a competitive bidding process. JND's bid was the lowest, and it is a well-known firm that has successfully administered numerous class settlements and judgments, including other settlements related to this oil spill. *See* the concurrently-filed Declaration of Gina Intrepido-Bowden ¶¶ 8–9. The Settlement Fund will pay the fees and costs of the Settlement Administrator to implement the notice program, administer payment distributions, including the TCE Fund, and perform the other administrative tasks described in the Settlement. JND estimates that these costs will range from approximately $30,000 to $50,000. *Id.* ¶ 16. These estimates are reasonable and necessary to ensure Settlement Class members are paid in a timely and efficient manner and that the Settlement Fund is appropriately maintained.

---

[9] The Consent Decree is already in place but was signed only by Plains. While it also applies to Plains' successors, the Settlement explicitly references Sable's and PPC's obligations to abide by the decree.

- 8 -

### 6.   **Attorneys' Fees and Expenses**

Settlement Class Counsel will apply to the Court for an award of reasonable attorneys' fees and costs. Per the Settlement Agreement, Class Counsel have agreed that they will not seek a fee in excess of thirty-three percent (33%) of the Settlement Fund, in addition to their reasonable case expenses. Any attorneys' fees and reimbursement of reasonable expenses granted by the Court will be paid from the Settlement Fund. SA ¶ 7.1. Fees will be paid in two installments, the second installment being when the Plaintiffs can draw upon the Letter of Credit.  Nelson Decl., Exhibit 4 (Plan of Allocation) ¶ 39.

## II.   **LEGAL STANDARD**

Class actions "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Ninth Circuit has a "strong judicial policy . . . favor[ing] settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted). Rule 23(e) creates a multistep process for approval.

*First*, the court must make a "preliminary fairness determination" that it is likely to "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 536661, at *7-8 (N.D. Cal. Feb. 11, 2019). *Second*, the court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the class, to give class members an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). *Third*, after a fairness hearing, the court may grant final approval to the proposed settlement on a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

## III.   **ARGUMENT**

A court should preliminarily approve a settlement and direct notice to the class if it finds that it is likely to approve the settlement as "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(1)(B)(i); (e)(2). Rule 23 sets out the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[10] As explained below, the proposed Settlement easily satisfies these requirements.

### A.  Proposed Settlement Class Representatives and Settlement Class Counsel zealously represented the Settlement Class.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As detailed above, Class Counsel vigorously prosecuted this action, and brought to bear their years of experience in class action and environmental litigation. Class Counsel diligently pursued fact and expert discovery critical to this successful outcome. *Supra* § I.B. Class Counsel also managed the extensive motion practice required by this case: overcoming Plains' motion to dismiss, maintaining eleven of thirteen claims (Dkt. 80); successfully certifying a Class virtually identical to the proposed Settlement Class (Dkt. 100); successfully pivoting to modify the Class to guard against PPC's new pipeline repair strategy (Dkt. 258); obtaining a Consent Judgment against the plan to replace the pipeline (Dkt. 282), and defeating Plains' summary judgment motion (Dkt. 128). That the case had survived motions to dismiss, class certification, summary judgment, and was set for a trial just a few months away, together indicate that this case was zealously

---

[10] The amended Rule 23(e)(2) "overlap[s]" with and "substantively track[s]" the Ninth Circuit's test for evaluating a settlement's fairness. *Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at *4 n.4 (S.D. Cal. Mar. 9, 2021); *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020). As such, Plaintiffs' analysis of Rule 23(e)(2) accounts for the Ninth Circuit's factors. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (summarizing factors).

litigated. *See generally Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, 2019 WL 8647819, at *6 (C.D. Cal. Nov. 4, 2019); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (class counsel "vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

The Class Representatives were actively engaged in the case. Each preserved and collected numerous documents, sat for a deposition, and regularly communicated with Class Counsel, up to and including evaluating and approving the proposed Settlement. Nelson Decl. ¶ 11. Their interests are aligned and coextensive with those of absent Settlement Class members, as is the relief they stand to receive.

**B.      The Settlement is the product of good-faith, informed, and arm's-length negotiations.**

This Settlement is the product of intensive, prolonged negotiations between experienced attorneys familiar with complex class action litigation and the legal and factual issues in this case. These arm's-length discussions, overseen by experienced and highly respected mediators, support approval. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (noting factors relevant to the analysis of collusiveness, including the presence of a disproportionate fee award, clear sailing agreement, or "kicker" causes reverting money to the defendant).

This proposed Settlement does not present any signs of collusion identified in *Bluetooth*.  No portion of the Settlement Fund will revert to the Settling Parties or their insurers. Class Counsel will apply for an award of attorneys' fees of up to 33 percent of the Settlement Fund, plus reimbursement of their expenses. Nelson Decl. ¶ 14. This award will be "separate from the approval of the Settlement, and neither [Plaintiffs nor Class Counsel] may cancel or terminate the Settlement based on this

1   Court's or any appellate court's ruling with respect to attorneys' fees." *Cheng*

2   *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019).

3        Additionally, as noted, the parties engaged in vigorous and contested

4   settlement negotiations with the aid of Hon. Layn Phillips (Ret.), Robert Fairbank,

5   and Robert A. Meyer, Esq., who are all "experienced mediators." *Baker v.*

6   *SeaWorld Ent., Inc.*, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020); *Soto v.*

7   *Diakon Logistics (Del.), Inc.*, 2015 WL 13344896, at *3 (S.D. Cal. Feb. 5, 2015);

8   Nelson Decl. ¶¶ 9–10.

9        In sum, this Settlement is the result of strenuous, arm's-length settlement

10  negotiations, following years of hard-fought litigation.

11       **C.    <u>The Settlement provides substantial relief to all Settlement Class</u>**

12  **<u>members.</u>**

13       The Court must ensure "the relief provided for the class is adequate," taking

14  into account (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness

15  of any proposed distribution plan, including the claims process; (3) the terms of any

16  proposed award of attorney's fees; and (4) any agreement made in connection with

17  the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). These

18  factors also overwhelmingly support preliminary approval.

19       **1.    <u>The Settlement provides significant benefits to the</u>**
         **<u>Settlement Class in light of the costs, risks, and delay of trial</u>**
20       **<u>and appeal.</u>**

21       The $70 million Settlement represents a substantial benefit to the Class,

22  which includes only 86 separate landowners of record. Moreover, each Class

23  Property, of which there are 183, will be allocated at least $50,150, with expected

24  median payments of approximately $90,000 and average payments of $230,000, net

25  of all anticipated fees and costs. These large payments are especially notable given

26  that the Pipeline is already on each Class Property. In addition, the Settlement

27  ensures that grantees cannot build a second pipeline without first obtaining new

28

easements, brings clarity to easement terms, and adds and reinforces important safety commitments.

The Settlement is also impressive in light of the substantial litigation risks the Class faced during almost nine years of litigation. PPC and Plains vigorously contested their rights under the easements, which turned on unique contract interpretation issues as well as technical disputes over the meaning of pipeline operation and maintenance. Indeed, PPC filed a motion for summary judgment on Claim 15 (Dkt. 267), arguing that none of the easements had terminated, relying upon complex expert proof on these very topics. PPC also raised arguments regarding forum-selection clauses and notice-and-cure provisions present in certain easements.

Even assuming a win on liability, Plaintiffs' lawsuit for declaratory relief would have been no guarantee of damages, which instead would have likely depended on follow-on negotiations or condemnation proceedings. Assuming the Class members got that far, they would have faced stiff challenges to their valuations, because establishing the scope of severance damages for a property where a pipeline already exists (and is largely underground and out of sight) is both novel and difficult.

While Class Counsel were prepared to prosecute the case despite these challenges, as they have repeatedly done in the face of other case-dispositive challenges, PPC's success on any one of these issues could have undermined the viability or worth of Plaintiffs' case. In light of the myriad challenges and years of delay the Class members would have each faced in obtaining their claimed damages—essentially requiring them to run the table on complex issues of contract interpretation through trial and appeal, and then potentially also condemnation proceedings to follow—the Settlement marks an extraordinary achievement.

Finally, experienced counsel's support for the proposed Settlement also weighs in favor of preliminary approval. *See Cheng Jiangchen*, 2019 WL 5173771,

at *6 ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (citation omitted). This is especially true given that extensive discovery and motion practice allowed both sides to gain "a good understanding of the strengths and weaknesses of their respective cases," reinforcing "that the settlement's value is based [on] . . . adequate information." 4 *Newberg & Rubenstein on Class Actions* (6th ed.) ("*Newberg*"), § 13:49. Here, Class Counsel strongly support the proposed Settlement. *See generally* Nelson Decl. ¶ 13.

### 2.      The Settlement benefits will be distributed directly to Settlement Class members through a simple process.

The proposed Settlement proceeds will be paid directly to Settlement Class members, without the need for a typical claims process. The amount of each Class Member's recovery is determined through a fair and straightforward methodology that is described in detail in the Plan of Allocation. *See also* § III.A., *infra* (describing proposed Plan). Since the Settlement Class has already been identified to contain 183 property parcels of record, Settlement Class members need not submit any information or proof of ownership to verify their entitlement to the proceeds. Instead, property ownership records are available through public and third-party sources. Accordingly, the Settlement readily satisfies Rule 23(e)(2)(C)(ii)'s requirement that settlement funds be distributed "in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (quoting *Newberg* § 13:53).

### 3.      Class Counsel will seek reasonable attorneys' fees and expenses.

The terms of Class Counsel's "proposed award of attorney's fees, including timing of payment," are also reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel will move the Court for an award of attorneys' fees of up to 33% of the

$70 million Settlement Fund, plus reimbursement of reasonable litigation costs. Nelson Decl. ¶ 14.

While "[c]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award," they are empowered to adjust the award where there is an "adequate explanation in the record of any 'special circumstances,'" such as "exceptional results for the class," the "absence of supporting precedents," and the risk undertaken by Class Counsel. *Compare Bluetooth*, 654 F.3d at 942 (citations omitted) *with Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (citations omitted). Courts in the Ninth Circuit "routinely" award fees that exceed the 25 percent benchmark where these factors are present. *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017); Minutes (in Chambers), *Lopez v. The GEO Group, Inc.*, 14-cv-6639 (C.D. Cal. April 25, 2016), Dkt. 74 (Gutierrez, J.) (awarding fee award of 33% of total recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award of 33% of total recovery).

The exceptional results obtained for the Settlement Class, the absence of supporting precedents in this type of litigation, and the risks undertaken over the last eight years provide ample support for the anticipated fee request. That said, Class Counsel's actual fee request, whatever it is, will be supported by Class Counsel's formal motion and supporting documentation. Class Counsel will also seek reimbursement of litigation expenses, such as the costs of expert witnesses, depositions, document databases, and other routine litigation efforts. Nelson Decl. ¶ 14.

Class Counsel will file their fee and expense application (along with Plaintiffs' request for service awards, discussed below) sufficiently in advance of the objection deadline. Class Members will thus have the opportunity to comment on or object to the fee application prior to the hearing on final settlement approval,

- 15 -

as the Ninth Circuit and Rule 23(h) require. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 895 F.3d 597, 614–15 (9th Cir. 2018).

### D.      The Proposed Plan of Allocation treats Settlement Class members equitably relative to each other.

Concurrent with this motion, Plaintiffs submit a Plan of Allocation to the Court detailing how the monies will be distributed to Settlement Class members. Nelson Decl., Exhibit 4. Each Property's share is based on fair and transparent criteria: first, the scope of any repair work, and second, the relative value of each Property's Pipeline easement and attendant severance damages, as calculated by experienced experts. *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *4–5 (S.D. Cal. March 17, 2021) (approving plan of distribution that "correlates each Settlement Class members' recovery to . . . each Settlement Class member's Recognized Loss").

First, the Agreement and Plan establish a Temporary Construction Easement ("TCE") Fund to compensate Settlement Class members for property access, Pipeline repair work, which will also include any valve-related construction Settling Parties need to complete prior to the Settlement's Effective Date. Sable and PPC have provided their current work plan to Class Counsel and will update Class Counsel if the work plan evolves. The Settlement Administrator, in consultation with Class Counsel, shall distribute payments from the TCE Fund (up to $2,000,000) subsequent to Preliminary Settlement Approval. Should timely compensation require the distribution of more than $2 million prior to the Effective Date, the Plan calls for the parties to work in good faith to consider increases to the allocation accordingly.

Second, each Class Property will be allocated a Base Payment of $50,000. Third, properties with automatic termination clauses (ATCs) will receive their pro rata share of an ATC Fund, which is valued at one-third of Net Settlement Fund. This allocation accounts for the fact that this subset of Properties had an additional

legal claim compared to non-ATC properties. Finally, each Property (ATC and non-ATC alike) will receive its pro rata share of the remaining Net Settlement Funds.

These pro rata shares are measured by the properties' permanent easement[11] and severance damages,[12] as calculated by Plaintiffs' expert real estate economist, in conjunction with property values negotiated with experts engaged by Defendants, and thus are tied to the types of monetary recovery that could have been available to Class Members had they succeeded in terminating the existing easements and requiring Settling Parties to purchase new easements.

The end result is excellent: assuming no Properties opt out of the Settlement, Class Counsel estimate that the per-Property Allocation Shares will be at least $50,150, with an estimated median payment of approximately $90,000 and an estimated average payment of $230,000. These figures, in turn, reflect the broad range of property values within the Class. In sum, the Plan of Allocation uses transparent, objective, and fair criteria to equitably apportion Settlement Class member payments.

Finally, Plaintiffs will request service awards of up to $20,000 to compensate the Class Representatives for the time and effort they spent pursuing the matter on behalf of the Class, including participating in discovery and settlement. Nelson Decl. ¶ 15.  Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Andrews v. Plains All Am. Pipeline L.P.* ("*Andrews*"), 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022); *Illumina*, 2021 WL 1017295, at *8 (granting $25,000 service award); *In re*

---

[11] Each property's permanent easement value is the product of the price per acre value for its category, the area of its permanent easement, and a factor of 90%, which reflects the ability to use the easement area.

[12] Severance damages are the damages to the remainder of the property as a result of the taking from the easement. Plaintiffs' experts used a uniform, Class-wide severance percentage, except an enhanced percentage will be applied to Properties that will receive new above-ground valve stations and whose rights-of-way do not already permit such structures to be built.

- 17 -

*Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards).

### E.    Other Agreements Properly Supplement the Settlement Agreement.

Finally, Plaintiffs must identify any agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); *see* Fed. R. Civ. P. 23(e)(2)(C)(iv). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note.  Plaintiffs have entered into two side letters, neither of which make any such trade-offs. The first is an agreement to ensure the restoration of property following repair work.  The second outlines the number of opt outs that would allow Settling Parties to terminate the Settlement (submitted to the Court under seal). *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (affirming that "the exact threshold, for practical reasons, was . . . confidential").

*    *    *

For all the above reasons, the proposed Settlement is "fair, reasonable, and adequate," and the Court should authorize the parties to direct notice to the class.

## IV.    The Court Will be Able to Certify the Proposed Settlement Class at Final Approval.

While the proposed Settlement resolves claims on behalf of the members of the previously-certified Class (Dkt. 100, class certification), the parties slightly altered the definition of the Settlement Class. Therefore, out of an abundance of caution, the Court should certify the proposed Settlement Class for settlement purposes only pursuant to Rule 23(e) because it meets the applicable prerequisites of Rule 23(a) and (b). *Cf.* Fed. R. Civ. P. 23(e)(1), 2018 adv. comm. note; *ODonnell v. Harris Cnty.*, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019) (When "the proposed settlement [does not] call[] for any change in the class

certified, or of the claims, defenses, or issues regarding which certification was granted," the Court need not take any further action) (quoting Fed. R. Civ. P. 23(e)(1), 2018 adv. comm. note).

### A.   The Rule 23(a) factors are readily satisfied.

**Numerosity**. The proposed Settlement Class is functionally identical to the Class the Court previously certified. Dkts. 100 at 11; 258 at 12. It still consists of 183 Class Properties owned by 86 class members, which meets the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010) (When the number of class members exceeds 40, the numerosity requirement is generally met.).

Moreover, the Settlement Class is clearly ascertainable because property ownership is readily known through governmental records, and thus it is administratively feasible "to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

**Commonality**. "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1111 (9th Cir. 2014). The same common questions of fact and law the Court previously identified still unify the Settlement Class, including whether grantees failed to operate, use, and/or maintain the Pipeline, and if so, for how long; whether the easements have terminated or been abandoned under California law; and whether the right-of-way grants permit the installation of a second pipeline.

**Typicality**. For similar reasons, Plaintiffs' claims are coextensive with those of the absent Settlement Class members, and Rule 23(a)(3)'s typicality requirement is satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Like the absent Settlement Class members, the Pipeline runs through each of the Class Representatives' properties and was installed on Plaintiffs' properties according to the right-of-way grants. As such, typicality is met.

**Adequacy**. Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Court has already determined: (1) the named plaintiffs and counsel have no conflicts with the class; and (2) plaintiffs will continue to protect the Settlement Class's interests in overseeing the Settlement administration. The Class Representatives seek efficient administration of the Settlement, and have reviewed and uniformly endorse the terms of the Settlement. Nelson Decl. ¶ 11. Further, Class Counsel are highly experienced and have been found adequate by this Court. Dkt. 100 at 13; *see also* Civil Minutes at 27 and Notice of Appearance of Nimish R. Desai, *Andrews*, 15-cv-4113 (C.D. Cal.), Dkts. 257 at 27 and 457 ("The Court thus finds that the proposed class representatives and counsel can fairly and adequately represent a proposed class of plaintiffs in this matter under Rule 23(a)(4).").

### B.    The Settlement Class satisfies Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," and, therefore, "there is clear justification for handling [and resolving] the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted). The common language in the easements paired with the common course of conduct by Plains and its successors is central to Plaintiffs' claims. Common, unifying questions include, for example: whether Plains' failure to maintain and operate the Pipeline caused the right-of-way grants to terminate; whether Plains' conduct constituted an intent to abandon the easements; and if the right-of-way grants are enforceable, whether Settling Parties' construction plan would interfere with the class's use and enjoyment of their properties.

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, class treatment is far superior to the litigation of 183 individual claims. Additionally, the monetary recoveries achieved by the Settlement could only be obtained through a successful declaratory relief action followed by individual condemnation proceedings, a process that would take many years. Further, the potential for inconsistent rulings and results, especially given the issues surrounding the interpretation of these contracts from the 1980s, favor class-wide resolution over other means of adjudication. Here, the proposed Settlement resolves the Settlement Class's claims all at once. Thus, superiority is readily met here, and Rule 23(e)(1)(B)(ii) is satisfied.

\*       \*       \*

Accordingly, Plaintiffs respectfully submit that the Court will "likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

## V.   **The Proposed Notice Program Provides the Best Notice Practicable to the Proposed Class.**

Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a Rule 23(b)(3) settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 1579251, at \*8 (S.D. Cal. Apr. 22, 2021) (citations omitted); *see also* "Notices from

the Court to the Class," § 21.31, Fed. Judicial Ctr., *Manual for Complex Litig.*
(2004) (listing relevant information).

The proposed notice here readily meets the Rule 23 standard, as well as
relevant guidance. The notice plan was designed with JND Legal Administration,
an experienced firm specializing in notice in complex class action litigation.
Intrepido-Bowden Decl. ¶¶ 6–9, 11, 39. As the Settlement Class is a small,
identifiable group, the principal method of reaching Settlement Class members will
be through direct, individual notice, consisting of both mail notice (long-form
notice) and individual email notice where email contact information is available.
*See id.* ¶ 19. Each notice conveys the structure of the Settlement and is designed to
capture Settlement Class members' attention with concise, plain language. *Id.* ¶ 31.
The Long Form Notice includes an overview of the litigation; an explanation of the
Settlement benefits; a brief description of the reason for Settlement; contact
information for Settlement Class Counsel; instructions on how to access the case
docket; and detailed instructions on how and by when to object to or opt out of the
Settlement. *Id.* ¶ 20. The email notice program was designed specifically to avoid
spam filters and to be easily read across all formats, including mobile. *Id.* ¶ 30.

Direct notice will be supplemented with publication notice in prominent local
newspapers of each county where Settlement Class members reside and a popular
online newspaper, Noozhawk.com. *Id.* ¶ 33, Exhibit D (Digital Ad Banner). *Id.*
¶ 34. Finally, JND will operate a Settlement Website with all relevant documents
and a toll-free telephone number for an interactive voice recording to request
additional information. *Id.* ¶¶ 35–38. Based on her considerable experience, Ms.
Intrepido-Bowden concludes the Notice Program is the "best notice practicable"
and is "consistent with other similar court-approved best notice practicable notice
programs." *Id.* ¶ 41.

Class Counsel selected JND after seeking bids from other providers, and
chose JND based on the quality of its proposal, competitive price, and track record,

which includes the parallel *Andrews* action and the *Deepwater Horizon* case. *See* Nelson Decl. ¶ 16; *see also* Intrepido-Bowden Decl. ¶ 8.

Plaintiffs respectfully request that the Court appoint JND as Settlement Administrator and direct it to issue notice.

## VI.    The Court Should Schedule a Fairness Hearing and Related Dates.

As set forth in the Proposed Order, the parties respectfully propose the following schedule.

| Event | Date |
|---|---|
| Notice to be Completed ("Notice Date") | 30 days after Preliminary Approval Order |
| Opt-Out Deadline | 45 days after Notice Date |
| Motions for Final Approval of Settlement, Plan of Allocation, and Attorneys' Fees and Expenses, and Service Awards | 35 days before Fairness Hearing |
| Objection Deadline | 25 days before Fairness Hearing |
| Reply Memoranda in support of Final Approval, Plan of Allocation, Attorneys' Fees and Expenses, and Service Awards | 14 days before Fairness Hearing |
| Fairness Hearing | (at least 90 days after Notice Date) |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to preliminarily approve the settlement. A proposed Preliminary Approval Order is attached.


Dated: April 9, 2024            LIEFF CABRASER HEIMANN &
                                BERNSTEIN, LLP

                                By:    */s/ Robert J. Nelson*

1
2
3
4
5
6

Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
Amelia A. Haselkorn (CSB No. 339633)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

7
8
9
10

Juli Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101

11
12
13

Lynn Lincoln Sarko, (Pro Hac Vice)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101

14
15
16
17
18

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227

19
20

*Attorneys for Plaintiffs*

21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
2:16-CV-03157-PSG-JEM

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs and the Class, certifies that this brief contains <mark>XXXX</mark> words, which complies with the word limit of L.R. 11-6.1.

*/s/ Robert J. Nelson*

2967982.10

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
2:16-CV-03157-PSG-JEM